ARTHUR J. STEVER, JR., et al., complainants.

v.

SAMUEL E. HALL et al., defendants

[Decided October 25th, 1923.]

1. Where an executor applied to the orphans court for leave to sell lands of his testator to pay debts, which was granted, and the lands sold and the sale confirmed, the purchaser shortly afterwards conveying the lands to the executor individually, both deeds being recorded about six months after the sale, such action is not sufficient to put a reasonably prudent man upon notice that the above conveyances constituted a means of carrying out a fraudulent agreement; fraud of this character must be clearly proved.

2. A deed from a trustee directly to himself is voidable at the option of the beneficiary; but there is no rule of law to prevent a trustee purchasing such property from a bona fide purchaser at the trustee's sale. so long as there was no corrupt agreement between him and the purchaser.

On bill to quiet title.

Messrs. Wurts & Plympton, for the complainants.

Mr. David D. Ackerman, for the defendants.

BENTLEY, V. C.

The bill in this case is filed to quiet title to a piece of land in Bergen county, of which William F. Hall died seized in 1882, leaving a will, wherein he devised his estate to his only two children, one of whom died in infancy, so that after a life estate to his widow, who is dead, all his property went to the defendant Samuel E. Hall, the other child. In and by said will he appointed Samuel G. V. Edwards and another his executors. The other failed to qualify and, therefore, Edwards became the sole executor. The defendant Samuel is

the only next of kin and heir-at-law, and is entitled to all of the estate left by his father, William F. Hall.

Shortly after qualifying the executor purchased a small mortgage, upon which there was due the sum of $1,300 from one Maria Hall, encumbering the premises in question. The assignment of this mortgage he took to himself individually and not in his representative capacity.

Edwards, as such executor, presented a petition to the orphans court, setting forth that the personal estate of William F. Hall was insufficient to pay the debts and praying permission to make sale of the premises in question, which were said to be of the "supposed value" of $3,000. Whereupon a decree was regularly entered in said court allowing the said sale, and such sale was confirmed by decree dated December 3d, 1885.

On the 9th day of February, 1886, a final account of Edwards was filed in the surrogate's office of Bergen county, wherein, among other things, he charged himself with the sum of $2,000, being the purchase price secured on the sale of the premises in question pursuant to the said decree, and prayed allowance for the sum of $1,805.50 paid on principal and interest of the Maria Hall mortgage.

On June 2d, 1886, Edwards recorded in the clerk's office of Bergen county two deeds conveying the land in question, one bearing date the 15th day of February, executed by Edwards to one Abram C. Holdrum, expressing a consideration of $2,000, and the other a bargain-and-sale deed, dated April 26th, 1866, from the said Holdrum to the said Edwards. These deeds were both acknowledged before Garrett Demarest, a master in chancery, who is dead, as are both of the parties to said conveyance. Edwards having theretofore died, his executor, with power of sale, conveyed the premises in question to Arthur J. Stever, the father of one of the complainants.

Quite some time before the filing of the bill herein the defendant received his first knowledge of the conditions that have given rise to this suit, by having the complainant take up with him the matter of his quit-claiming any interest he

might have in the premises in question. From that time to the filing of the bill the parties engaged in extensive negotiations and, certainly, no laches or neglect can be charged to either as against the other. When it became apparent that the matter would have to be determined by litigation, the complainant forestalled the defendant by filing this bill, whereupon the defendant raised the main question by the filing of a counter-claim, seeking to have a trust declared upon the premises in favor of the defendant, and for an accounting.

The theory of the defendants' case is that the conveyances mentioned above constituted the means of carrying out a fraudulent agreement between the parties thereto, whereby Edwards purchased, through an intermediary, for his individual benefit, property that he had held in trust. I fail to see how it can be said that the record of these conveyances was sufficient to put a reasonably prudent man upon notice. Perhaps taken in connection with various facts that were proved upon the hearing a grave suspicion may be aroused in the mind of anyone; but of course it is trite to say that suspicion is not proof and that fraud of this character must be clearly proved.

My difficulty with the defendants' case arises out of his efforts to prove that the complainants' testator was *not* an innocent purchaser; that he was a purchaser for value is not denied; but it is maintained that he took with notice of the corrupt agreement of Edwards with Holdrum. With this I am not inclined to agree. Astute counsel, in the interests of his client, has been able to uncover many facts and circumstances that a purchaser with reasonable vigilance would not have found. At the time the complainants' testator, Stever, searched the title all he found was the will of William F. Hall, the petition for sale, and the consequent decrees in the orphans' court, and then a deed from the executor as such to Holdrum, and one back from Holdrum to the executor in his individual capacity. The only agreement, if it may be so denominated, that appears upon the records, was the long period of time that had existed between the making of the

conveyances and the recording thereof. That, however, is not an unusual thing, or perhaps it is more accurate to say was not unusual in those days and in the rural parts of the state. When Stever purchased this land from the executor of Edwards on August 6th, 1890, he had a right to rely upon the title as it appeared of record, and especially in view of the lapse of time since the making of the conveyances attacked

That a deed from a trustee directly to himself is voidable at the option of his beneficiary, is elementary; but there is no rule of law to prevent a trustee purchasing such property from a *bona fide* purchaser at the trustee's sale. So long as the sale by the trustee was conducted in good faith, without any corrupt agreement between him and the purchaser, he may immediately commence negotiations with the purchaser and buy the self-same property for himself in his individual capacity. *Creveling* v. *Fritts, 34 N. J. Eq. 134.* In my opinion there was nothing on the record to put the purchaser Stever upon inquiry, and to hold otherwise would render insecure a very large percentage of the titles in this state.

The defendant has made great point of the fact that Edwards filed his account one week before the date of the deed from himself as executor to Holdrum and notwithstanding charged himself with the sum of $2,000, being the proceeds of the sale. This in itself does not prove anything. The decree confirming this sale bears date the 3d day of December, 1885, or more than two months before the date of the account just referred to. The fact that the conveyance had not been executed was no reason why the executor should not with perfect propriety charge himself with the proceeds of the sale, because a sale had been made and confirmed and the purchaser was bound to take title and pay therefor.

The formal elements of a suit under a statute having been all admitted, I will, on the above reasoning, advise a decree in accordance with the prayer of the bill.