At the time of the death of Edward M. Sweeney, he and Somers L. Doughty were the owners of certain real estate situate in Atlantic City, each holding an undivided one-half interest therein.
At the time of the filing of the bill in this cause, the undivided one-half interest of Edward M. Sweeney was held in equal parts by his children — John J. Sweeney, Mary Sweeney Young and George Edward Sweeney — all of whom were of age, and Elizabeth Corey, a grandchild of a deceased daughter (who held subject to the right by the curtesy of her father, Jenks Alfred Corey), the said Elizabeth Corey, who is a minor.
The lands described in the complainant's bill consisted of three contiguous lots described as parcels B, C and D in tract No. 1, and constituted a tract of land at the northwest corner of Maryland and Drexel avenues, one hundred feet in front by one hundred feet in depth.
On or about the 28th of January, 1920, the complainant, as general guardian of Elizabeth Corey, filed a petition "in the matter of the second application of the Pennsylvania *Page 580 
Company for Insurances on Lives and Granting Annuities, general guardian of Elizabeth Corey, for the sale of infants' lands." Pursuant to proceeding thereunder, the said Somers L. Doughty was appointed special guardian of said Elizabeth Corey, a minor, and was directed by an order dated April 23d 1920, to sell all the right, title and interest of the said minor in the lands described.
Sale of said interest in parcel B was made to one Ferdinand Stadler for the sum of $100, and, after confirmation thereof by the court, a deed dated April 5th, 1921, was duly executed and delivered.
Sale of the minor's interest in parcels C and D was made to one Joseph J. Schultz for the sum of $300, and, after confirmation by the court, a deed dated July 20th, 1921, was executed and delivered.
On March 16th, 1921, the said Doughty, individually, the said John J. Sweeney and Gertrude Sweeney, his wife, Mary M. Young and Louis A. Young, her husband, and George E. Sweeney, being all the remaining owners of said parcel B, conveyed all their interests therein to said Stadler for the sum of $700.
On the same day, the same parties conveyed to Joseph J. Schultz all their interest in parcels B and C for the sum of $2,100.
The recitals in the deed by the special guardian to Schultz substantially state the authority of the special guardian and his actions thereunder, as follows:
"Whereas, By a certain order of the court of chancery of the State of New Jersey made `in the matter of the second application of the Pennsylvania Company for Insurances on Lives and Granting Annuities, general guardian of Elizabeth Corey, for the sale of infants' lands, docket 47, folio 586, bearing date the 23rd day of April, 1920,' it was ordered that Somers L. Doughty be and he thereby was appointed special guardian in said matter for said infant.
"And it was further ordered, that said special guardian sell all and singular the right and title of the said infant to the said lands in the petition particularly described at public *Page 581 
or private sale as the guardian should deem most advantageous for the infant, but not below a fixed price in said order provided for, and that, before executing any deeds for the said lands to the purchaser or purchasers thereof, the said guardian report to the chancellor the sale thereof in writing upon his oath, at the same time giving due notice to the Pennsylvania Company for Insurances on Lives and Granting Annuities, general guardian of said infant, and to Jenks Alfred Corey, the father of said infant, of the application for the confirmation of such sale, to the end that the same might be passed upon by the chancellor.
"And it appearing that thereafter said special guardian sold said lands and premises pursuant to said order and to the statutes in such case made and provided to Joseph J. Schultz and reported the same to the chancellor, and at the same time giving notice to the Pennsylvania Company for Insurances on Lives and Granting Annuities, general guardian of said infant, and to Jenks Alfred Corey, father of said infant.
"And it further appearing that said the Pennsylvania Company for Insurances on Lives and Granting Annuities, general guardian, and Jenks Alfred Corey, have filed a formal consent in writing to said sale in said cause, and that thereupon the chancellor by his decree, bearing date the 29th day of April, 1921, approved of said sale and directed a conveyance of the premises in the words following: `It is, on this 29th day of April, 1921, ordered that the said sale and agreement be, and the same are, hereby confirmed according to the terms and conditions in said report mentioned. And it is further ordered that the said Somers L. Doughty, special guardian, execute a deed to the said Joseph J. Schultz for parcel C and parcel D of tract No. 1 upon his complying with the terms upon which the deed was to be delivered.'"
After Schultz obtained title he conveyed the premises to Doughty, and after Stadler obtained title he conveyed to one Bacharach, who conveyed to Doughty.
On August 20th, 1924, the complainant filed its bill, averring the appointment of Doughty as special guardian, the *Page 582 
sales made by him under such order, the confirmations thereof by this court, the several of the minor's interests, and the conveyance from Stadler to Bacharach and from Bacharach and Schultz to Doughty; that the money received from said land was $400, and that the reasonable value of the minor's one-eighth interest in said land was, at the time of the filing of the bill, $750, and charging that "the transaction herein set forth, whereby Somers L. Doughty, individually, acquired the title of Elizabeth Corey, his ward, amounted to and constituted in fact and in law a fraud upon his ward, Elizabeth Corey."
I am satisfied that the amount received by the special guardian as consideration for the sale of the lands and premises was the fair and reasonable value thereof at the date of the respective sales.
The answer of Doughty to the bill is —
"1. The conveyance of said lands by Somers L. Doughty, special guardian, to Ferdinand F. Stadler, was made in good faith and without any connivance or scheming on their part to defraud said Elizabeth Corey, a minor. The negotiations had with said Ferdinand F. Stadler for the purchase of said land conveyed to him was conducted and arranged by one Benjamin Bacharach, a real estate agent, and said Ferdinand F. Stadler purchased said lands for the specific purpose of constructing and erecting a garage building thereon for his own personal use. Said Stadler first entered into agreement to buy said land some time about the year 1918. Said agreemeent was not in writing, but said Stadler then and there paid a portion of the purchase price agreed upon as a deposit or evidence of his good faith, and to bind the bargain. Settlement for said land could not then be had, because one George E. Sweeney, who also held an interest in said property, was a minor.
"2. Subsequently, because of the delay in making conveyance, said Stadler became dissatisfied and decided not to erect said garage building, and requested that he be permitted to withdraw his agreement to buy, and that the portion of the purchase price which he had paid be returned to *Page 583 
him. Said Stadler made these requests to said Bacharach, the agent, and not to said defendant, Doughty. Said Bacharach then agreed to purchase from said Stadler his interest in said property, and to assume the obligations of said Stadler's agreement to purchase same. Said Bacharach then and there returned to said Stadler the portion of said purchase price which he had paid.
"3. Defendant, Doughty, special guardian as aforesaid, not knowing of this agreement between said Bacharach and said Stadler, reported to this court that he had agreed to sell said land to said Stadler. The report of said sale was then confirmed by order of this court, as is alleged in said bill of complaint. Said Doughty, as special guardian, then executed and delivered deed for said property to said Stadler. Subsequently, said Stadler and wife conveyed said property to said Bacharach, as is alleged in said bill of complaint.
"4. Subsequent to the conveyance of said lands from Doughty, special guardian, to said Stadler, defendant, Joseph J. Schultz, who was then conducting a wall paper and paste business, both wholesale and retail, was desirous of building a warehouse for himself and for use in his said business, and being of the opinion that the property described in the bill of complaint herein was ideal for that purpose, he began negotiations with defendant, Doughty, for the purchase thereof. Defendant Schultz was advised by said defendant Doughty that a portion of the entire tract of one hundred feet by one hundred feet had been sold to said Stadler. Defendant Schultz then agreed with said Doughty to purchase the remainder of said tract providing he, Doughty, could secure the interest of said Stadler for him, the said Schultz. Said Schultz agreed to pay to Doughty, special guardian, and others having an interest in said property, the total sum of $2,400 for the remainder of said tract. That portion of the tract which had been sold to said Stadler was for the consideration of $800.
"Defendant Doughty went to said Bacharach, agent as aforesaid, for the purpose of ascertaining whether said Stadler would sell his portion of said tract, and he, said Doughty, *Page 584 
was then advised by said Bacharach that Stadler had conveyed his interest in said property to him, said Bacharach. Previous to this, however, said Schultz had paid to said Doughty the sum of $150 on account of the purchase of all of said property. Said Bacharach agreed to sell his interest in said property for the sum of $900, which represented a profit of $100 over and above the amount he had paid therefor. When defendant Schultz was advised of this by said Doughty, he, said Schultz, gave to said Doughty the said sum of $100, which he, said Doughty, subsequently paid to said Bacharach as a part of the consideration for the purchase of his interest in said property.
"6. At the time when said Schultz agreed to purchase said property he was indebted to said Doughty, personally, in a considerable sum of money, and without solicitation on the part of said Doughty, after all arrangements had been made for the purchase of said land by said Schultz, he, Schultz, suggested and requested that the conveyance of said Bacharach interest in said land be made direct to said Doughty as security to him, said Doughty, for the payment of the moneys due and owing by said Schultz, as aforesaid, as well as for certain other reasons. In accordance therewith said Bacharach then conveyed his said interest in said land to said Somers L. Doughty.
"7. The entire consideration for the purchase of said land from said Bacharach was paid by defendant, Joseph J. Schultz. Said defendant, Somers L. Doughty, paid no portion thereof, and has ever since, and does now, hold said property for said Schultz, he, the said Doughty, having no personal or individual interest therein.
"8. Said Somers L. Doughty, special guardian, then reported to this court the sale of the remainder of said tract to said defendant, Schultz, and said sale was confirmed by order of this court as is alleged in said bill of complaint. Said Somers L. Doughty, special guardian, and all other parties having an interest in said land, then conveyed the same to said Schultz, and he, the said Schultz, paid the entire consideration therefor. *Page 585 
"9. Subsequently, said Joseph J. Schultz and wife conveyed said remainder of said land to said Somers L. Doughty, for the same purpose and the same reason that the conveyance of the interest of said Bacharach had been conveyed to him. Said Somers L. Doughty has ever since, and does now, hold said property in trust for said defendant, Schultz, and he, the said Doughty, has no personal or individual interest therein. He, the said Somers L. Doughty, has paid no part of the purchase price thereof. There has been at no time any connivance, scheming or secret agreement between defendants Doughty and Schultz made for the purpose of defrauding said Elizabeth Corey, minor, or any other person having an interest in said property. Said transactions involving the sale of said premises have been, at all times, in good faith. Said Somers L. Doughty has at no time sought, nor is he at the present time desirous of having, any interest in said premises.
"10. Said defendant Somers L. Doughty is desirous and anxious to convey the title to said land to said defendant Joseph J. Schultz, and has heretofore been unable to do so because he has been led to believe that the circumstances or facts alleged in said bill of complaint or this answer created a defect in or cloud upon the title thereto; and said defendant Somers L. Doughty tenders himself ready and willing to make, execute and deliver such instruments as may be necessary to transfer the title of said property to said Schultz if the same can be legally done, or upon authority from or approval of this court."
The answer of Schultz, who, upon petition, was admitted as a defendant, in so far as his transactions were concerned substantially as set forth in Doughty's answer.
The testimony supports these answers, and I find the answers to substantially set forth the facts, and I find there is no evidence that at the time of the sale or of making the report, Doughty had any intention or expectation of becoming the purchaser or owner of the property.
In many respects the case is similar to Voorhees v. Bailey,59 N.J. Eq. 292, and the reasoning of Vice-Chancellor Pitney *Page 586 
therein is applicable to this case, and no improvement can be made to his statement of the controlling principles, as follows:
"The fundamental principle governing all dealings with property held in trust is that the cestui que trust is entitled to the best efforts of the trustee to further in all legitimate ways the interests of the cestui que trust. It is the duty of the trustee to use and exercise such care and diligence in dealing with the trust estate as a prudent, sagacious man would bestow upon his own. The trustee is not permitted to have any interest in the subject of the trust antagonistic to, or in any degree inconsistent with, that of the cestui que trust. It follows from this that where there is a trust for sale, the trustee cannot become, either directly or indirectly, a purchaser at his own sale, even though the sale be at auction and so conducted as to insure the best price, and, in point of fact, the price actually paid appears to be a fair and full one. The principal reasons for extending the restrictions so far are — (1) that the trustee shall not be subjected to the least temptation to abate any reasonable efforts to procure the best price for the trust property; (2) the danger that the trustee may have become possessed, in the course of his dealing as trustee, of some secret information of fact and circumstances affecting the value of the trust property, of which he may take advantage for his own benefit, and (3) the difficulty of ascertaining whether, in fact, all proper efforts have been made by the trustee to procure the best price.
"It is at once apparent that it is of the essence of this rule that the obnoxious inconsistent position of the trustee should exist before or at the time of the sale, which period, in a sale at auction, is the moment of striking off the property to the highest bidder and declaring him the purchaser. The trustee must entertain the intention or desire to purchase before or at the moment of the sale in order to place himself in a position antagonistic to his cestui que trust.
"If the trustee advertises and prepares for sale with proper care and diligence, and in good faith, without entertaining the *Page 587 
least intention or expectation of becoming a purchaser, and, in case of a sale at auction, does not, in fact, directly or indirectly, bid for the property, and it is struck off in good faith to another person, then there is a complete absence of any of the elements of danger to the interests of the cestui quetrust which underlie the restrictive rule in question."
The quotation from the late Justice Vredenburgh, speaking for the court of errors and appeals in Wortman v. Skinner, 12 N.J. Eq. 358
(at pp. 371, 372), is especially applicable:
"Let us first see, before considering the evidence, what this doctrine, as applied to the case before us, really is. My understanding of it is this: That if an administrator, at public or private sale, sells land to another, upon an agreement made before or at the sale, that such person shall buy or bid off, not for himself or for others, but for the administrator, that the purchase-money is to come from him, and the deeds made from him to the bidder, and by the bidder back again to the administrator, in pursuance of said agreement, then equity will set aside the proceedings as fraudulent in law. But if the purchaser bids, not for the administrator, but for himself, or for the heirs of the deceased, or for anybody else, then the principle does not apply. The rule was made from considerations of public policy, to prevent the land from being sold under value by the secret machinations of the administrator, and, therefore, such agreement and arrangement must be made and exist before and at the very instant of the sale. Any agreement made, however, soon after it is struck off by the administrator to the purchaser, is not within the letter, the spirit or the meaning of the rule. The rule has then had its operation upon the sale, and the land is again instantly free for all the world to purchase. The very reason for establishing the original rule requires this construction of it, otherwise it would produce the very evil it was intended to guard against, by restricting to that extent the power of the purchaser to alienate. Applying these principles to the case before us, if Cooper and Emmons, on the 2d day of July, 1825, bid off this property for the complainant, which was carried out by the subsequent execution *Page 588 
of the deeds to the complainant, then the complainant was at that time, and has been ever since, but a trustee for the defendant, and his title is voidable in equity. But if such was not the fact — if the purchase was made on the 2d of July, 1825, not for the complainant or for his benefit, but for the benefit of Cooper and Emmons, or of the heirs of N. Skinner, and the deed from Cooper and Emmons to the complainant was by virtue of an arrangement made after the 2d of July, 1825, then there was no legal fraud in the transaction. Immediately after the property was struck off on the 2d of July, 1825, the complainant had as good a right to buy from those to whom the property had been struck off as anybody else, and it would then be in him fraud, neither actual nor legal."
The testimony is that Doughty is now holding this property, not as owner, but as trustee for Schultz, and that Schultz furnished all the consideration money therefor. It is unnecessary now to determine whether Doughty holds the deed as a mortgage to secure him for moneys due him from Schultz.
Stever v. Hall, 95 N.J. Eq. 169, appears to be the latest pronouncement in saying: "There is no rule of law to prevent a trustee purchasing property from a bona fide purchaser at a trustee's sale, so long as there was no corrupt agreement between him and the purchaser," and cites Creveling v. Fritts, 34 N.J. Eq. 134,
in which Vice-Chancellor Van Fleet held: "If a sale is shown to have been fair and honest when made, and that no fraudulent purpose then existed, it cannot be overthrown by subsequent acts or purposes."
A decree will be advised dismissing the bill.
The defendant Schultz files a counter-claim based upon the inability of Doughty to convey to him, because of the facts and circumstances alleged in said bill of complaint. This alleged cloud upon the title is based upon or "by reason of any of the circumstances or facts alleged in either the bill or answer." The bill being dismissed, and no facts or circumstances creating a cloud upon the title being found, the counter-claim must also be dismissed. *Page 589